IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| **William Marable,** | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   1:21cv1131 (TSE/JFA) |
| | ) |
| **Lt. Jacobs, et al.,** | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

William Marable ("Plaintiff" or "Marable"), a Virginia inmate, filed a pro se civil action under 42 U.S.C. § 1983 alleging he was denied his constitutional right to adequate medical care. [Dkt. No. 4]. The second amended complaint filed on April 26, 2022 alleges that Lt. Jacobs and an unknown former employee of the Jail, Jane Doe (collectively "Defendants"), violated his Eighth Amendment rights by denying him medical treatment after he suffered an injury to his finger on May 25, 2022. [Dkt. No. 10 at 4].[1] Defendant Jacobs filed a motion for summary judgment, with affidavits, documents, and a brief in support. [Dkt. No. 18, 19, 20]. Plaintiff was advised of his right to file responsive materials to the motion for summary judgment pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), but he has not filed a response. Accordingly, this matter is now ripe for disposition. For the reasons that follow, Defendant Jacob's motion for summary judgment must be granted.

### I. Undisputed Facts

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

---

[1] Plaintiff also alleges that Defendant Doe cut off the tip of his finger by "slamming" the tray slot shut. [Dkt. No. 10 at 4]. Plaintiff has not identified Defendant Doe. On December 28, 2022, the Court directed Plaintiff to show cause why Defendant Doe should not be dismissed without prejudice because he has not identified her, has not asserted any efforts on his part to identify her despite records from the jail filed with the motion for summary judgment indicating who was on duty on the day he was injured, or provided any information that would allow service on Defendant Doe. On January 30, 2023, the Court dismissed Defendant Doe without prejudice. [Dkt. No. 24].

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendant Jacobs set forth a statement of undisputed facts in his motion for summary judgment. Plaintiff has not complied with his obligations under those Rules by submitting statements of undisputed and disputed facts, which are deemed admitted. Gholson v. Murray, 953 F. Supp. 709, 714 (E.D. Va. 1997) (court assumes uncontroverted facts in movant's motion for summary judgment are admitted); see also JDS Uniphase Corp. v. Jennings, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is deemed admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).[2]

    1.    On May 25, 2020 at the Meherrin River Regional Jail ("the Jail"), at approximately 3:50 p.m., a medical emergency was called in for Marable. Officer Loretta Johnson, Lieutenant Rodney Brown, Officer Krystina Parrish, and two Jail nurses responded to Marable's cell and observed Marable holding his right hand with blood on the floor and wall. [Dkt. Nos. 19-27; 19-28 at 1-2].

    2.    The Jail personnel observed that the food tray slot was open and the telephone was in front of the tray slot inside the cell. [Id.]. Officer Johnson asked what occurred, and Marable stated that when he pulled the phone cord further into the cell, the tip of his right middle finger was severed when the tray slot closed. [Id.].[3] Nurse Johnson observed the fingertip on the ground near the telephone, secured it, and put it on ice. [Id.].

    3.    On May 25, 2020, Marable was transported by emergency medical services to VCU Health Community Memorial Hospital in South Hill, Virginia. [Dkt. Nos. 19-1; 19-2 at 44, 373-

---

[2] The record of admissible evidence includes defendant Jacobs' affidavits and exhibits. [Dkt. Nos. 19-1 through 19-30].

[3] The telephone is on a mobile pedestal that is moved from cell to cell by inmates. The phone stays outside of the cell when an inmate uses the phone.

2

78]. He was transported back to the Jail on the same day. [Id.].

4. On May 27, 2020, Lt. Jacobs began an investigation as to what had occurred. [Dkt. Nos. 19-27; 19-28 at 2]. Lt. Jacobs interviewed Marable. Marable stated that on May 25, 2020 he was using the telephone. [Id.]. The telephone was in his left hand, and his right hand was resting on the tray slot. Id. Marable stated that the phone cord was stuck, so he "yanked" the phone cord which caused the tray slot to move upward, resulting in Marable's injury. [Id.].

5. Lt. Jacobs played no role in the medical treatment decisions for Plaintiff, but he was assigned to investigate the incident. [Dkt. No. 19-27 at ¶¶ 2-5].

6. From May 26, 2020 to May 28, 2020, Marable used the Jail telephone on several occasions where he discussed the incident. [Dkt. Nos. 29, 30]. On several occasions during these calls, Marable stated that he had severed his fingertip when he pulled the telephone cord through the tray slot: May 26, 2020, call 1, 1:20-1:51; May 27, 2020, call 1, 3:15-4:05; May 28, 2020, 7:37-9:05. [Dkt. No. 30]. During these calls, he was encouraged to sue the Jail. [Id., May 27, 2020, call 1, 4:04-4:16].

7. On July 9, 2020, Marable informed Officer Johnson that an officer cut off his finger. [Dkt. No. 19-27, 19-28 at 3]. Marable stated an unknown Caucasian female Jail officer cut his finger off, but he did not identify the officer. [Id.].

8. Following the incident on May 25, 2020, Marable received regular medical treatment and monitoring over the course of two years for his injury and recurring pain. [Dkt. Nos. 19-2 through 19-9]. His treatment included regular appointments with physicians and nursing staff, wound care treatment, pain medication, and proper bandaging. [Id.]. For instance, on May 29, 2020, Jail medical staff treated Marable for his injury and pain. [Dkt. No. 19-2 at 26]. The Jail completed a patient health assessment of Marable on June 2, 2020. [Dkt. No. 19-3 at 2-4, 13-15].

- On June 15, 2020, Jail medical staff treated Marable for his injury and pain. [Dkt. Nos. 19-2 at 26; 19-7 at 19].
- On June 29, 2020, Jail medical staff treated Marable for his injury and pain. [Dkt. Nos. 19-2 at 25; 19-7 at 21].
- On July 6, 2020, Jail medical staff ordered additional treatment for Marable, treated on July 9, 2020. [Dkt. Nos. 19-8 at 5; 19-9 at 6].
- Marable treated on July 14, 17, 2020. [Dkt. Nos. 19-8 at 12; 19-9 at 6].
- On September 16, 2021, Jail medical staff treated Marable for his injury and pain. [Dkt. Nos. 19-2 at 24-25; 19-8 at 23].
- On March 28, 2022, Jail medical staff treated Marable for his injury and pain. [Dkt. No. 19-2 at 24].
- On May 6 and 18, 2022, Jail medical staff treated Marable for his injury and pain. [Dkt. No. 19-2 at 23-24].

9. During the same period of time, Marable was also regularly receiving pain medication. [Dkt. Nos. 19-5 at 11-17; 19-2 at 1-10]. Further, Marable was seen by off-site doctors for treatment and orthopedic consults to assess and treat Marable's injury. [Dkt. Nos. 19-17 at 418, 19-18 at 1-4; 19-21 at 4-9].

10. Marable did not exhaust the Jail's administrative grievance procedures prior to filing suit related to the allegations raised in the Amended Complaint. [Dkt. No. 19-22].

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate, i.e., that no genuine issues of material fact are present for resolution. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The facts which a moving party bears the burden of proving are those which are material: materiality is dictated by "the substantive law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4

Once a moving party has met its burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court will view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Nevertheless, "[o]nly disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

The non-moving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This applies even where the non-moving party is a pro se prisoner. Campbell-El v. Dist. of Columbia, 874 F. Supp. 403, 406-07 (D.C. 1994); see also Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements....").[4] Unsupported speculation is not enough to withstand a motion for summary judgment. See Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it "might affect the outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted).

---

[4] "Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing Fed. R. Civ. P. 56(e)). Affidavits must "be made on personal knowledge, set out facts admissible in evidence, and show that the affiant is competent to testify on the matters stated." Harris v. Mayor & City Council of Baltimore, 429 F. App'x 195, 198 n.5 (4th Cir. 2011). Additionally, "summary judgment affidavits cannot be conclusory ... or based upon hearsay." Evans, 80 F.3d at 962.

5

### III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement is mandatory," Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)), and an "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). Exhaustion is required even if the administrative remedies do not meet federal standards, are not "plain, speedy, and effective," and even if the relief sought is not available via the grievance process, such as monetary damages. Porter, 534 U.S. at 524. To properly exhaust, thereby giving the agency a full and fair opportunity to adjudicate a plaintiff's claims, the plaintiff must adhere to the agency's deadlines and procedural rules. Woodford, 548 U.S. at 89–90.

The PLRA also requires that an inmate must exhaust his administrative remedies *before* bringing a suit to challenge prison conditions. Ross v. Blake, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)) (holding that the PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.") (emphasis added); see Graham v. Gentry, 413 F. App'x 660, 662-663 (4th Cir. 2011) (the PLRA requires an inmate "to exhaust any "available" administrative remedies before pursuing a § 1983 action in federal court). The requirement that a prisoner exhaust before filing "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does

6

occur by leading to the preparation of a useful record." Porter, 534 U.S. at 519; see also Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015) ("[t]he PLRA requires 'proper exhaustion' that complies with the 'critical procedural rules' governing the grievance process.") (quoting Woodford, 548 U.S. at 95).

Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D. Md. 2016) (citing Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011)). "'A litigant's failure to raise issues during an administrative appeal can constitute a failure to exhaust administrative remedies.'" Kikumura v. Osagie, 461 F.3d 1269, 1282 (10th Cir. 2006) (citation omitted); see also Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) ("to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'"); see, e.g., Smith v. Vidonish, 210 F. App'x 152, 157 (3d Cir. 2006) (finding failure to comply with prison grievance procedure to resubmit the grievance does not make grievance procedure unavailable to inmate where inmate was instructed that he could submit an edited grievance). A prisoner cannot exhaust his administrative remedies by "spurning" the established rules:

> unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred. Any other approach would allow a prisoner to "exhaust" state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem--or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner.

Pozo v. McCaughtry, 286 F.3d 1022, 1023-24 (7th Cir. 2002)) (citations omitted).

Here, Plaintiff states in his unsworn second amended complaint that he filed a grievance on June 18, 2020. [Dkt. No. 10 at 3]. In support of the motion for summary judgment, the custodian at the Jail filed an affidavit averring that he had reviewed the grievance file at the Jail for Marable and found no grievances related to medical care he received on May 25, 2020. [Dkt.

7

No. 19-22]. Jacobs' motion for summary judgment asserting Marable had not exhausted his claims about denial of medical care is well taken and will be granted.[5]

### IV. Conclusion

For the reasons outlined above, Defendant Jacobs' motion for summary judgment [Dkt. No. 18] will be granted. An appropriate Order and judgment shall issue.

Entered this 31st day of January 2023.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge

---

[5] Whether the tray or an officer cut off the tip of Plaintiff's finger is not material to resolution on summary judgment because the Plaintiff failed to exhaust his claim. The Court's decision is based only upon the Plaintiff's failure to exhaust and does not decide the merits of the underlying Eighth Amendment claim.

8